[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13602

_____

BRADLEY JUDAS RODRIGUEZ,

Plaintiff-Appellant,

*versus*

SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-20041-MGC

_____

Before JORDAN, LAGOA, and MARCUS, Circuit Judges.

JORDAN, Circuit Judge:

An Administrative Law Judge with the Social Security Administration (the SSA) denied Bradley Rodriguez's application for disability benefits and supplemental security income. After the Appeals Council denied review, Mr. Rodriguez filed a federal action challenging the denial of benefits. The district court granted summary judgment for the Commissioner of the SSA, and Mr. Rodriguez now appeals.

As he did in the district court, Mr. Rodriguez raises a number of constitutional challenges to the appointment of SSA ALJs, the members of the Appeals Council, and the Commissioner of the SSA. He also argues that the ALJ's adverse decision is not supported by substantial evidence.

Following a review of the record, and with the benefit of oral argument, we affirm the district court's entry of summary judgment in favor of the Commissioner. First, the Commissioner has statutory authority to appoint SSA ALJs pursuant to 5 U.S.C. § 3105 and properly exercised that authority through ratification in July of 2018, before Mr. Rodriguez filed his application for benefits. Second, the members of the Appeals Council—an administrative body of regulatory creation—are not principal officers under the Constitution because they have a superior—the Commissioner. As a result, those members do not have to be appointed by the President and confirmed by the Senate. Third, though the for-cause removal provision for the Commissioner, 42 U.S.C. § 902(a)(3), is unconstitutional, it is severable and Mr. Rodriguez has not shown that

he is entitled to retrospective relief in the form of a new disability/benefits hearing. Fourth, the ALJ's decision is supported by substantial evidence.[1]

## I

In September of 2018, Mr. Rodriguez applied for disability benefits and supplemental security income. He asserted that his disability began on September 1, 2017, when he was 32 years old, and was due to a history of traumatic brain injury, bipolar disorder, and depression.

When the SSA denied his application and subsequent request for reconsideration, Mr. Rodriguez—who was then proceeding *pro se*—requested a hearing before an ALJ. That hearing took place in November of 2019, and we summarize the evidence presented below.

## A

Mr. Rodriguez suffers from chronic headaches and dizzy spells. He has trouble concentrating, remembering, and paying attention. At various stages of his life, he has been without a home and has resided in a homeless shelter.

At the hearing before the ALJ, Mr. Rodriguez testified that he takes a lot of medications—some of which make him drowsy—for brain injury, epilepsy, migraines, anxiety, and depression. He also stated that he has been diagnosed with post-traumatic stress

---

[1] As to any issues not discussed in our opinion, we summarily affirm.

disorder and bipolar disorder. He detailed the difficulties he has with memory each day, including forgetting where he has left his toothbrush and other hygiene products. He explained that he completed assignments, such as housekeeping, each day at the Miami Rescue Mission Homeless Shelter, where he had resided for over a year and a half. His days are otherwise filled with group sessions, sermons, exercise, watching TV, and an afternoon nap necessitated by the medications he takes.

Mr. Rodriguez was last employed in 2017 for six months as a line cook at a burger establishment. He was terminated from that position due to constant mistakes. Previously, he had worked as a carpenter helper for a year and a half in 2014, a forklift operator in 2010, and a sales associate at a home improvement store for six months in 2004 or 2005. He explained that he was never able to hold a job long because he errs too frequently due to the fatigue caused by his medications.

Treatment notes from a variety of medical and other professionals detailed Mr. Rodriguez's history of physical and mental symptoms. From 2015 to 2018, Mr. Rodriguez saw at least two physicians and two psychologists who diagnosed him with a variety of memory-related symptoms (unspecific communication disorder, unspecific neurocognitive disorder, and memory/concentration loss following a traumatic brain injury) and psychological disorders (depressive disorder due to a medical condition with depressive features, PTSD, major depressive disorder, bipolar

affective disorder, history of drug abuse, adjustment disorder with mixed anxiety and depressed mood, and auditory hallucinations).

A vocational expert testified that a person with Mr. Rodriguez's characteristics (age, education, limitations, and work experience) could not perform any of his past jobs, except for sales attendant, and that he could perform occupations with simple routine tasks requiring only simple work-related decisions. The vocational expert named three such occupations: kitchen helper, dining room attendant, and hospital cleaner. But the vocational expert also explained that a person with Mr. Rodriguez's characteristics, if he required frequent supervision, could not perform any of his previous jobs and identified no occupations a person with such limitations could perform.

**B**

In April of 2020, the ALJ issued a decision finding that Mr. Rodriguez was not disabled under the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3)(A). The ALJ used the required five-step sequential process to determine disability. *See* 20 C.F.R. §§ 404.1520(a)(1) & 416.920(a)(1). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims."). The ALJ found that (1) Mr. Rodriguez had not engaged in "substantial gainful activity" since the alleged disability onset; (2) his "traumatic brain injury, neurocognitive disorder, and migraines" were severe impairments; (3) the combination of those impairments did not meet the

required severity; and (4) he could not perform any past work; but (5) he could perform certain occupations in the national economy. As a result, Mr. Rodriguez was not disabled.

Mr. Rodriguez requested review of that decision, which the Appeals Council denied in October of 2020. The denial of review rendered the ALJ's decision final. *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997) (explaining that when the Appeals Council declines to review an ALJ's decision, that decision becomes the final decision of the Commissioner).

Pursuant to 42 U.S.C. § 405(g), Mr. Rodriguez then sought review in the district court. Still proceeding *pro se*, he filed a complaint and requested the appointment of counsel. Assigned counsel filed an amended complaint which frames the issues for this appeal.

Mr. Rodriguez raised a number of constitutional challenges in the district court. He argued that the ALJ and the members of the Appeals Council were not properly appointed under the Appointments Clause of the Constitution and that the for-cause provision protecting the Commissioner of the SSA from removal violated the separation of powers. He also asserted that the ALJ in his case had failed to assess his subjective complaints regarding his symptom severity and its effect on employment, and that substantial evidence did not support the ALJ's finding that he could maintain substantial gainful activity.

A magistrate judge issued a report concluding that Mr. Rodriguez's constitutional challenges failed because the ALJ who adjudicated his application was "constitutionally appointed at the

time of all relevant aspects of the decision under review;" Mr. Rodriguez offered no support for his claim that the members of the Appeals Council were improperly appointed under the Appointments Clause; and assuming that the removal provision for the Commissioner violated the separation of powers, Mr. Rodriguez could not show he was harmed. As for the arguments relating to the ALJ's decision, the magistrate judge determined that the ALJ properly considered Mr. Rodriguez's subjective complaints and that substantial evidence supported the finding that those complaints were inconsistent with the medical records; the ALJ properly applied the law; and substantial evidence supported the ALJ's findings.

The district court adopted in full the magistrate judge's report and granted summary judgment in favor of the Commissioner. The court denied Mr. Rodriguez's motion for judgment on the pleadings, motion for summary judgment, and request for oral argument.

## II

We first address Mr. Rodriguez's constitutional challenge to the appointment of SSA ALJs because, if he is successful on this front, he would be entitled to a new disability/benefits hearing before a properly-appointed ALJ. *See Lucia v. S.E.C.*, 585 U.S. 237, 251 (2018) (ordering a new hearing before a properly-appointed Securities and Exchange Commission ALJ after holding that the ALJ who adjudicated the matter was not appointed in a manner consistent with the Appointments Clause). On constitutional

questions, our review is plenary.  *See Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale*, 901 F.3d 1235, 1239 (11th Cir. 2018).

## A

The Social Security Act, 42 U.S.C. § 301 *et seq.*, authorizes the SSA to award disability insurance benefits and supplemental security income payments to disabled individuals.  Congress has directed the Commissioner of the SSA to "make findings of fact" and "decisions as to the rights of any individual" seeking benefits.  *See* 42 U.S.C. §§ 405(b)(1) (detailing the requirements for benefits determinations) & 1383(c)(1)(A) (same).

To that end, § 405(a) authorizes the Commissioner to adjudicate benefits applications through a layered administrative process:

> The Commissioner of Social Security shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

These layers include an initial SSA determination, 20 C.F.R. §§ 404.902 & 416.1402; a reconsidered determination, 20 C.F.R. §§ 404.908(a) & 416.1408(a); a hearing before an ALJ, 20 C.F.R. §§ 404.929 & 416.1453; and a request for and possible review by the

22-13602               Opinion of the Court                 9

Appeals Council, 20 C.F.R. §§ 404.967 & 416.1467.  Once the administrative process is complete, judicial review is available in federal court.  *See* 42 U.S.C. §§ 405(g) & 1383(c)(3).

The Appointments Clause of the Constitution, Art. II, § 2, cl. 2., provides that "Officers" of the United States—which the Supreme Court has described as "a class of government officials distinct from mere employees"—will be appointed by the President by and with the advice and consent of the Senate.  *See Lucia*, 585 U.S. at 241.  The Appointments Clause also identifies a class of "Inferior Officers," which the Supreme Court has recognized as distinct from "principal officers."  *See Edmond v. United States*, 520 U.S. 651, 659–60 (1997).   "Only the President, with the advice and consent of the Senate, can appoint a principal officer; but Congress (instead of relying on that method) may authorize the President alone, a court, or a department head to appoint an inferior officer." *Lucia*, 585 U.S. at 244 n.3.  *See* Art. II, § 2, cl. 2 ("Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.");  *United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021) ("[T]he Appointments Clause permits Congress to dispense with joint appointment, but only for inferior officers.").

In 2018, the Supreme Court held in *Lucia* that SEC ALJs were officers under the Constitution—it did not say which type— who must be appointed pursuant to the Appointments Clause. *See Lucia*, 585 U.S. at 249, 251. *Lucia* led to Appointments Clause challenges to SSA ALJs, who up to that time had been selected by

lower-level staff and not appointed by the Commissioner of the SSA. *See generally Carr v. Saul*, 593 U.S. 83, 95–96 (2021) (holding that Appointments Clause challenges to SSA ALJs do not have to be presented to the ALJ or the Appeals Council and can be raised for the first time in federal court).

## B

Through a provision of the Administrative Procedure Act Congress has authorized executive agencies, like the SSA, to "appoint as many administrative law judges as are necessary." 5 U.S.C. § 3105. And it has specifically authorized the Commissioner of the SSA to "appoint such additional officers and employees as the Commissioner considers necessary to carry out the functions" of the SSA. *See* 42 U.S.C. § 904(a)(1).

On July 16, 2018, after *Lucia* was decided, the Acting Commissioner of the SSA ratified the appointments of all then-sitting SSA ALJs and approved those appointments as her own. *See* 84 Fed. Reg. 9582, 9583, 2019 WL 1202036 (Mar. 15, 2019) ("To address any Appointments Clause questions involving Social Security claims, and consistent with guidance from the Department of Justice, on July 16, 2018 the Acting Commissioner of Social Security ratified the appointments of [SSA] ALJs and approved those appointments as her own."). That ratification preceded Mr. Rodriguez's hearing before the ALJ in November of 2019.

## C

Mr. Rodriguez asserts that SSA ALJs serve in violation of the Appointments Clause for two reasons. First, he argues that

Congress has not vested the Commissioner with the power to appoint ALJs. Second, he argues that the Constitution requires "affirmative" appointment of officers, and thus the Acting Commissioner's July 2018 ratification was ineffective. We reject both arguments.

We recently said—without elaboration—that the Acting Commissioner's ratification in July 2018 made SSA ALJs "constitutionally appointed." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1270 (11th Cir. 2024). *Raper*, however, addressed whether there was an Appointments Clause problem when, after vacatur of an initial ALJ decision due to an Appointments Clause violation, the same ALJ—now properly appointed—handled the hearing on remand. *See id.* at 1270–71. Because the issue here is whether the ALJ who presided at Mr. Rodriguez's initial hearing was properly appointed, we do not believe *Raper* is dispositive.

As noted, 5 U.S.C. § 3105 provides that "[e]ach agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted." Our sister circuits have so far unanimously said or suggested that the Acting Commissioner's ratification in July of 2018 resulted in SSA ALJs being constitutionally appointed from that point forward. *See, e.g., Cody v. Kijakazi*, 48 F.4th 956, 961–62 (9th Cir. 2022); *Probst v. Saul*, 980 F.3d 1015, 1024–25 (4th Cir. 2020); *Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537, 539 n.1 (6th Cir. 2020); *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 159 (3d Cir. 2020). But they have not specifically addressed § 3105.

In our view, § 3105 provides the Commissioner of the SSA with authority to appoint ALJs as inferior officers to preside over hearings and adjudicate applications for benefits. The SSA is, after all, an executive "agency" of the United States government. *See* 42 U.S.C. § 901(a) ("There is hereby established, as an independent agency in the executive branch of the Government, a Social Security Administration[.]"). We therefore agree with the results reached by our sister circuits. *See also Butler v. Soc. Sec. Admin.*, 331 F.3d 1368, 1369 (Fed. Cir. 2003) (stating, in a case involving an ALJ from the SSA, that ALJs are positions "created by statute," i.e., by § 3105).

Mr. Rodriguez argues, however, that § 3105 does not allow the Commissioner to appoint SSA ALJs because the SSA was not an independent agency when the APA was enacted in 1946. He is mistaken.

"The [SSA] was established in 1946 and subsequently made a part of the new Department of Health, Education and Welfare . . . in 1953. HEW was replaced by the Department of Health and Human Services . . . where the SSA remained until 1994[.]" 1 Jennifer L. VanderVeen, Elder Law: Advocacy for the Aging § 13:1 (3d ed. & Sept. 2023 update). In 1995, the SSA again became an independent executive agency. *See* Pub. L. 103-296, § 101, 108 Stat. 1464 (1994). *See also Smith v. Charter*, 99 F.3d 635, 636 n.1 (4th Cir. 1996) ("On March 31, 1995, the Social Security Administration became an independent agency, separating from the Department of Health and Human Services."). In July of 2018, when the Acting

Commissioner ratified the appointment of SSA ALJs, the SSA was an independent executive agency.  For purposes of § 3105, the time period that matters is July of 2018, and not the 1940s.

But Mr. Rodriguez is not done.  He points out that the Appointments Clause refers to "Heads of Departments," not heads of "agencies."  Because an agency is not a "Department" under the Constitution, he continues, § 3105 cannot vest the Commissioner with the power to appoint ALJs.  This argument also fails.

The Supreme Court has held that an agency "constitutes a 'Department[ ]' for purposes of the Appointments Clause" if it is a "freestanding component of the Executive Branch not subordinate to or contained within any other such component[.]"  *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 510–11 (2010) (holding that the SEC was a "Department" under the Appointments Clause).  The SSA has been an independent executive agency since 1995, *see* 42 U.S.C. § 901(a), and as a result it is a "Department" for purposes of the Appointments Clause.

Mr. Rodriguez's next argument is that the Acting Commissioner's ratification of SSA ALJs was a "legal nullity."  Specifically, he contends the Constitution requires affirmative appointment of inferior officers.  He points out that ratifications by some other agencies after *Lucia* included the names of the ALJs and maintains that approving or ratifying a prior appointment is not the same as making the appointment in the first instance, and so the former is not "affirmative."  Once again, we are unpersuaded.

Taking the latter point first, Mr. Rodriguez cites no authority for the proposition that administrative appointments must be "affirmative" in the way that he describes. The fact that other agencies may have listed the names of the ALJs whose appointments were confirmed or ratified after *Lucia* does not mean that the Acting Commissioner acted arbitrarily or capriciously. Judicial review of agency action "accords a presumption of administrative regularity," *Hussion v. Madigan*, 950 F.2d 1546, 1550 (11th Cir. 1992), and here nothing suggests that the Acting Commissioner behaved illegally. We therefore "decline [the] invitation to look behind" the Acting Commissioner's ratification of the SSA ALJs. *See K & R Contractors, LLC v. Keene*, 86 F.4th 135, 144 (4th Cir. 2023) (upholding post-*Lucia* ratification of ALJs by the Secretary of the Department of Labor). *Cf. Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 158 (1803) ("[T]he signature, which gives force and effect to the commission, is conclusive evidence that the appointment is made.").[2]

---

[2] For the same reason, we reject Mr. Rodriguez's similar "affirmative" appointment argument as to the members of the Appeals Council.

We are equally unpersuaded by Mr. Rodriguez's insistence that, because Congress has passed narrower statutes specifically vesting certain department heads—like the Attorney General, the Secretary of Defense, and the Secretary of Education—with appointment power, the general vesting of authority in § 3105 is somehow ineffective to vest power in the SSA Commissioner. First, Mr. Rodriguez cites no authority in support of his contention that the power to appoint must come from a specific statute rather than a general one. Second, Mr. Rodriguez overlooks 42 U.S.C. § 904(a)(1), through which (as we described above) Congress vested the Commissioner with the authority "to appoint such additional officers and employees as the Commissioner considers necessary to carry out the functions of the Administration under [Title 42,

As to the ratification itself, our sister circuits have given the Acting Commissioner's action full legal effect. Because a department head's "express ratification" of an ALJ's appointment can "cure[ ] any constitutional defect in [the] original hiring," *K & R Contractors*, 86 F.4th at 144, we agree with their decisions. *See, e.g.*, *Seago v. O'Malley*, 91 F.4th 386, 390 (5th Cir. 2024) (concluding that the Acting Commissioner was "lawfully serving as Acting SSA Commissioner . . . when she ratified the appointments of all SSA ALJs in July 2018"); *Rush v. Kijakazi*, 65 F.4th 114, 117 (4th Cir. 2023) ("Because [the SSA Commissioner] was legally serving as Acting Commissioner, her appointments of the ALJs who decided appellants' cases were valid."); *Cody*, 48 F.4th at 962 ("[T]he Acting Commissioner had properly ratified [the ALJ's] appointment."); *Cirko*, 948 F.3d at 159 (noting that, after the Acting Commissioner's ratification, claimants "will have their claims adjudicated by a constitutionally appointed ALJ"); *Probst*, 980 F.3d at 1024 ("[T]he Commissioner ratified the appointments of all the agency's ALJs, thereby validating their constitutional status."); *Ramsey*, 973 F.3d at 539 n.1 ("[T]he Acting Commissioner of Social Security ratified the appointments of all Social Security ALJs on July 16, 2018, thereby foreclosing any future Appointments Clause challenges to ALJ decisions after that date."). *Accord Raper*, 89 F.4th at 1270, 1272 (stating that, after the Acting Commissioner's ratification, "the ALJ [in

---

Chapter 7]." That is to say, even if he were right that Congress were required to pass a specific statute vesting appointment authority in the Commissioner, it has done so.

that case] had been constitutionally appointed" and "[t]here was no longer a constitutional violation").

## D

Mr. Rodriguez contends that the Appeals Council members also serve in violation the Appointments Clause.  He argues that those members are actually principal officers, not inferior officers, and as such must be appointed by the President and confirmed by the Senate.

In *Edmond*, 520 U.S. at 662–63, the Supreme Court explained what differentiates a principal officer, who must be appointed by the President and confirmed by the Senate, from an inferior officer, who may be appointed by the head of a department.  Inferior officers may be appointed by what is sometimes referred to as the "Excepting Clause," whose "obvious purpose is administrative convenience."  *Id.* at 660.

> Generally speaking, the term "inferior officer" connotes a relationship with some higher ranking officer or officers below the President: Whether one is an "inferior" officer depends on whether he has a superior . . . . "[I]nferior officers" are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate.

*Id.* at 662–63.

Here, there is no question that the Appeals Council members have a superior—the Commissioner of the SSA.  The work of

the Appeals Council and its members is supervised by the Commissioner, who is appointed by the President and confirmed by the Senate. By statute, the Commissioner is "responsible for the exercise of all powers and the discharge of all duties of the [SSA], and shall have authority and control over all personnel and activities thereof." 42 U.S.C. § 902(a)(4). The Appeals Council members are SSA personnel and are therefore subject to the Commissioner's authority and control.

Mr. Rodriguez's claim that the Appeals Council members are principal officers comes from a misreading of the Supreme Court's decision in *Arthrex*. In *Arthrex*, the Court determined that the Patent Trial and Appeal Board—comprised of administrative patent judges (APJs)—wielded "unreviewable executive power" that was "incompatible with their status as inferior officers." 594 U.S. at 18. *Arthrex* is distinguishable on its facts because "Congress structured the PTAB differently." *Id*. at 14. The Court in *Arthrex* compared the PTAB members to the inferior officers in *Edmond*: "What was 'significant' to the outcome [in *Edmond*]—review by a superior executive officer—is absent here: APJs have the 'power to render a final decision on behalf of the United States' without any such review by their nominal superior or any other principal officer in the Executive Branch." *Id*.

Mr. Rodriguez cites an SSA regulation which provides that "[t]he dismissal of a request for Appeals Council review is binding and not subject to further review." 20 C.F.R. § 404.972. Based on that regulation, he asserts that the Appeals Council members

essentially exercise the same unreviewable power as the APJs in *Arthrex*. But that does not follow.

In *Arthrex*, a statute expressly precluded review by a superior, principal officer and reserved the sole authority to grant rehearings to the Patent Trial and Appeal Board, which was composed of APJs. *See Arthrex*, 594 U.S. at 25 (citing 35 U.S.C. § 6). The Supreme Court held that the Constitution "forbids the enforcement of *statutory* restrictions on the Director that insulate the decisions of APJs from his direction and supervision." *Id.* at 27 (emphasis added). The Court contrasted this situation with "a handful of contemporary officers who are appointed by heads of departments but who nevertheless purportedly exercise final decisionmaking authority," noting that the latter scenarios "involve inferior officers whose decisions a superior executive officer can review or implement a system for reviewing." *Id.* at 20.

The "Appeals Council remains a creature of regulatory rather than statutory creation." *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019). Its decisions are "binding and not subject to further review" by regulation, and its authority derives from the discretion and delegated authority of the Commissioner. In this context, agency regulations are not the same as statutes, and delegated administrative authority is not the same as statutory restriction. The Commissioner is still ultimately "responsible for the exercise of all powers and the discharge of all duties of the [SSA]" and retains "authority and control over all personnel and activities thereof." 42 U.S.C. § 902(a)(4). Indeed, Congress has explicitly provided for the

Commissioner to make "decisions as to the rights of any individual applying for a payment." 42 U.S.C. § 405(b). The regulatory restriction on further agency review, derived from the Commissioner's own authority—distinct from statutory restrictions imposed by Congress, as in *Arthrex*—does not convert the Appeals Council members into principal officers under the Constitution.

**E**

Mr. Rodriguez asserts he is entitled to a "constitutional" remedy because the for-cause removal provisions protecting the Commissioner, the Appeals Council members, and SSA ALJs violates the separation of powers. He maintains that these violations directly affected him and provide him with a right to "constitutionally compliant proceedings."

**1**

We start with the Commissioner. As an initial matter, the government agrees that the Commissioner's for-cause removal provision is unconstitutional. *See* Appellee's Br. at 25. The parties' disagreement stems from what remedy, if any, Mr. Rodriguez is owed.

The for-cause removal provision states that the Commissioner "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3). The Supreme Court has "adhered to the general rule that the President possesses 'the authority to remove those who assist him in carrying out his duties'" to retain executive power. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 215 (2020) (quoting *Free Enter.*

*Fund*, 561 U.S. at 513–14).  There are only two exceptions: "one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or administrative authority." *Id.* at 218.  The Court has therefore held that for-cause removal provisions similar to the one here—which protect a single agency head with significant executive power—are unconstitutional. *See Collins v. Yellen*, 141 S. Ct. 1761, 1770 (2021) ("[T]he FHFA's structure violates the separation of powers."); *Seila Law*, 591 U.S. at 232 ("CFPB's leadership by a single independent Director violates the separation of powers.").

In *Kaufmann v. Kijakazi,* 32 F.4th 843 (9th Cir. 2022), the Ninth Circuit addressed an argument similar to the one Mr. Rodriguez makes here.  Relying in part on a memorandum from the Department of Justice's Office of Legal Counsel, it held that § 902(a)(3) is unconstitutional. *See id.* at 848 (citing *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. ——, 2021 WL 2981542, at *7–11 (O.L.C. July 8, 2021)).  Given the Supreme Court's decisions in this area, specifically *Collins* and *Seila Law*, we agree with the parties and the Ninth Circuit that § 902(a)(3) is unconstitutional.  The President can therefore remove the SSA Commissioner "at will." *Kaufmann*, 32 F.4th at 849.

But the Ninth Circuit also held in *Kaufmann* that § 902(a)(3) is severable.  As a result, in order to obtain retrospective relief, an SSA claimant must show that he suffered some harm from the Commissioner serving under an unconstitutional removal provision. *See id.* at 849–50.  Because the claimant in that case could not

22-13602                Opinion of the Court                 21

make such a showing, he was not entitled to a new disability/benefits hearing. *See id.* ("Claimant has presented neither evidence nor a plausible theory to show that the removal provision caused her any harm. Claimant does not assert, for example, that the President took an interest in her claim or that the Commissioner directed the Appeals Council to decide her case in a particular way because of the statutory limits on the President's removal authority. Nothing in the record suggests any link whatsoever between the removal provision and Claimant's case."). We again agree with the Ninth Circuit.

First, "when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Free Enter. Fund*, 561 U.S. at 508 (internal citations omitted). Here, the remaining provisions of the statute are "capable of fully independent function, and nothing in the text, structure, or history of the statute makes it evident that Congress would have preferred, as an alternative to a Commissioner who is removable at will, no Social Security Administration at all." *Kaufmann*, 32 F.4th at 849 (internal quotation marks omitted).

Second, *Collins* cuts against Mr. Rodriguez's requested remedy of a new disability/benefits hearing. In that case, the Supreme Court addressed retrospective relief where an agency's unconstitutional for-cause removal protection violated the separation of powers. *See Collins*, 141 S. Ct. at 1787–89. The Court held that the unconstitutional removal provision did not affect the underlying

agency officials' authority to act, as it did not implicate appointment. *See id.* at 1787. Accordingly, completely undoing the agency action did not make sense. *See id.* at 1788. But because it was "still possible for an unconstitutional provision to inflict compensable harm," the Court sent the case back for the lower court to resolve the remedy issue in the first instance. *See id.* at 1789.

Mr. Rodriguez has not explained why *Collins* does not apply. Nor has he told us how § 902(a)(3) caused him any harm. We see no need, therefore, to remand this case to the district court for further proceedings with respect to the question of remedy. *See Arthrex*, 594 U.S. at 27 ("Because the source of the constitutional violation is the restraint on the review authority of the Director, rather than the appointment of APJs by the Secretary, Arthrex is not entitled to a hearing before a new panel of APJs.").

**2**

As part of his claim for retrospective relief, Mr. Rodriguez makes an additional argument. He asserts that the for-cause protections governing the Appeals Council members and SSA ALJs are sufficiently violative of the Constitution to warrant relief. *See* 5 U.S.C. § 7513(a) ("[A]n agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service."); 5 U.S.C. § 7521(a) ("An action may be taken against an administrative law judge appointed under [§] 3105 of this title by the agency in which the administrative law judge is employed only for good cause established and

determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board.").

We need not address Mr. Rodriguez's separation of powers challenge to §§ 7513(a) and 7521(a). The relief Mr. Rodriguez seeks for these alleged constitutional violations is a new disability/benefits hearing, but there is no question that the ALJ and the Appeals Council members in his case were properly appointed. The alleged constitutional infirmity lies in the for-cause removal provisions, and Mr. Rodriguez has not pointed to any harm he suffered from §§ 7513(a) and 7521(a). There is nothing in the record which suggests, for example, that the Commissioner or the President were considering dismissing or terminating the ALJ who adjudicated Mr. Rodriguez's case (or the Appeals Council members who denied review) but were prevented from doing so by the for-cause removal provisions. *See K & R Contractors*, 86 F.4th at 149; *Kaufmann*, 32 F.4th at 849–50.

We find persuasive the Ninth Circuit's analysis in *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021), which rejected a separation of powers challenge to § 7521(a) as applied to Department of Labor ALJs and alternatively held that the company seeking review had failed to show any harm from the alleged constitutional violation:

> Here, the ALJ lawfully exercised power that he possessed by virtue of his appointment, which the Secretary ratified before the ALJ adjudicated the claim. Absent a showing of harm, we refuse to unwind the decisions below. While *Collins* remanded for further

factual development on the issue of harm, we need not to do so here, as the record is clear. Decker never submitted additional evidence or post-hearing argument despite obtaining two extensions to do so. In short, there is no indication the ALJ took unlawful action. On this record, we simply cannot conclude that the existence of § 7521 alone tainted the ALJ's decision.

*Id.* at 1137 (citations omitted and paragraph structure altered). *Accord K & R Contractors*, 86 F.4th at 149 (holding that the company seeking review was not entitled to have an ALJ's decision set aside "absent reason to believe that the unconstitutional removal provision itself inflicted harm").

### III

Mr. Rodriguez contests the ALJ's determination that he is not disabled. He argues that (a) the ALJ did not correctly apply the law, (b) the ALJ improperly weighed his testimony and practical ability to maintain substantial gainful activity, and (c) the record does not support the finding that he has the ability to maintain such activity.

When, as here, the "ALJ denies benefits and the [Appeals Council] denies review, we review the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). Factual findings are "conclusive if they are supported by substantial evidence, consisting of such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citations omitted). "[W]hatever the

meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Consequently, "[o]ur limited review does not allow us to decide the facts anew, make credibility determinations, or re-weigh the evidence." *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1045 (11th Cir. 2020) (citations omitted).

With respect to the ALJ's application of governing law, Mr. Rodriguez seems to assert that the SSA bore the burden of proving that he could maintain substantial gainful activity. But that is not quite right. Disability claims involve a burden-shifting framework, which proceeds as follows:

> The claimant bears the initial burden of establishing the existence of a disability. To shoulder this burden, the claimant must prove that he is unable, due to his physical or mental impairment, to perform his previous work. The burden then shifts to the Secretary to establish that there is alternative gainful employment in the economy that the claimant is able to perform. If the Secretary is successful, the burden shifts one final time—back to the claimant, who then must prove that he is unable to perform the jobs suggested by the Secretary.

*Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). *See also Brown v. Yuckert*, 482 U.S. 137, 146 (1987) ("The Secretary . . . has express statutory authority to place the burden of showing a medically determinable impairment on the claimant."); *Doughty*, 245 F.3d at 1278 ("The burden is primarily on the claimant to prove that he is disabled[.]").

The SSA's burden is "in almost all cases satisfied only through the use of vocational expert testimony." *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986) (quoting *Ferguson v. Schweiker*, 641 F.2d 243, 247–48 (5th Cir. 1981)).  Here, a vocational expert testified that Mr. Rodriguez could perform his past work as a sales attendant and identified three additional jobs in the national economy that he could perform (kitchen helper, dining room attendant, and hospital cleaner).

Given the vocational expert's testimony, the burden shifted back to Mr. Rodriguez to prove that he is unable to perform the jobs identified by the vocational expert.  But he does not contest the ALJ's determination that he could perform certain jobs available in the national economy; he challenges only how the ALJ weighed his own subjective testimony as compared to the objective medical record.

The Social Security Act requires claimants to "furnish[ ] such medical and other evidence of the existence thereof as the Commissioner . . . may require."  42 U.S.C. § 423(d)(5)(A).  As relevant here, an "individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings."  *Id.*  And when a claimant's subjective complaints are inconsistent with medical and other evidence, an ALJ may discredit the claimant's statements. *See, e.g.*, *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("Substantial evidence in the record supports the ALJ's finding, as

the medical and other evidence simply was not consistent with [claimant's] alleged disabling pain.").

Mr. Rodriguez takes issue with the ALJ's determination that he has the ability to engage in substantial gainful activity, pointing to his testimony that his medications make him too drowsy to function. His complaint about drowsiness, however, is a subjective one, and is evaluated in part based on credibility—a matter generally within the ALJ's province. *See* 20 C.F.R. § 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled.").

The ALJ detailed a variety of objective medical evidence pertaining to Mr. Rodriguez and recognized that he has both mental and physical limitations but did not find that those limitations preclude any work in the national economy. The ALJ also reviewed Mr. Rodriguez's symptoms, noted that medications helped, detailed the conditions from which he suffers, and described positive progression with treatment. *See* 20 C.F.R. § 404.1529(c) (detailing the factors necessary for "[e]valuating the intensity and persistence of [claimant's] symptoms, such as pain, and determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work"). The ALJ considered Mr. Rodriguez's subjective complaints and found that they were not supported by the record as a whole.

Mr. Rodriguez's testimony about drowsiness was inconsistent with evaluations by a variety of medical and other professionals, and thus the ALJ could reasonably discredit that testimony.

The ALJ's determination was based on the entire record and was supported by substantial evidence.

## IV

We affirm the district court's decision.

**AFFIRMED.**